JOURNAL ENTRY AND OPINION
Plaintiff-appellant Warren Wolfson ("appellant") appeals from the order of the trial court entering judgment upon the jury verdict in favor of defendant-appellee Euclid Avenue Associates ("appellee") on appellant's claim for a deficiency judgment. Appellant assigns the following error for our review:
 THE JURY VERDICT AND JUDGMENT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Finding appellant's assignment of error to lack merit, we affirm the judgment of the trial court.
 I.
On or about July 6, 1973, appellee purchased real property located at 20611 Euclid Avenue in Cleveland, Ohio. To finance this real estate transaction, appellee entered into a loan agreement with First Federal Savings and Loan Association of Rochester, New York ("First Federal") and Chase Manhattan Mortgage Realty and Trust ("Chase"). Pursuant to the loan documents, appellee executed a promissory note and mortgage in the amount of $2,800,000.00 in favor of Chase, as the construction lender, and First Federal, as the permanent lender. Thereafter, Chase assigned its interest in the note and mortgage to First Federal.
Part I of the mortgage governed the construction loan. Section3.07 of Part I of the mortgage was a non-recourse provision which precluded First Federal or its assignees from obtaining a deficiency judgment[1] against appellee or its individual partners. Section 3.07 stated:
 Anything contained in this Mortgage or in the Note to the contrary notwithstanding the Mortgagee agrees that (i) in an action to foreclose this Mortgage, the Mortgagor, or the individual partners thereof, shall not be liable for any deficiency, including for the costs of enforcement between the total amount secured by this Mortgage and the proceeds of the foreclosure sale, and no deficiency judgment will be sought against the Mortgagor, or the individual partners thereof, in such foreclosure action and (ii) no action shall be brought against the Mortgagor, or the individual partners thereof, for payment of the indebtedness secured hereby or for the performance of any of the terms, covenants or conditions of this Mortgage * * *. (Emphasis added.)
Part II of the mortgage, which governed the permanent loan, also contained non-recourse language in Section 41; however, Section 41 only provided non-recourse protection to appellee's individual partners and did not expressly afford appellee non-recourse protection. Section 41 stated:
 The individual partners of Mortgagor (both General and Limited Partners thereof), shall not be personally liable hereon, jointly or severally, and no deficiency or personal judgment shall be sought and/or rendered against the said individual partners of the Mortgagor (both General and Limited Partners thereof) in any action or proceeding brought on this note by the Mortgagee or assigns.
Appellee leased the subject property to Braeview Manor, Inc. ("Braeview"); Braeview operated a nursing home on the premises. However, Braeview experienced financial difficulties and ceased making rent payments to appellee. By 1989, appellee had defaulted on the note and mortgage held by First Federal.
On May 11, 1989, First Federal and its Ohio affiliate, FirstFed Services of Ohio, Inc. ("FirstFed"), filed a foreclosure complaint against appellee, Braeview, and other creditors. On September 13, 1990, the parties to the foreclosure action filed a stipulated foreclosure decree. At that time, appellee still owed First Federal the sum of $2,158,729.67 plus interest under the note and mortgage.
On January 31, 1991, First Federal assigned the note and mortgage to FirstFed. At a public auction conducted on February 4, 1991, FirstFed purchased the subject property for $2,200,000.00. The sheriff's sale of the subject property left a deficiency of $693,491.38 plus accumulated late charges and interest.
On August 17, 1992, FirstFed sold the premises to appellant for $3,500,000.00. Pursuant to the sales agreement, appellant also purchased FirstFed's interest in the 1973 note and mortgage executed by appellee.
On January 10, 1995, appellant filed a complaint against appellee in the Cuyahoga County Court of Common Pleas. As assignee of the promissory note executed by appellee, appellant sought a deficiency judgment in the amount of $693,491.38 plus interest, the balance due on the original note and mortgage after the sheriff's sale proceeds.
The parties filed cross-motions for summary judgment and, in a journal entry filed on May 13, 1996, the trial court granted summary judgment in favor of appellant in the amount of deficiency ($693,491.38), plus interest at the rate of 11.25% per annum from February 4, 1991, and accumulated late charges in the amount of $51,151.19. Appellee filed an appeal, asserting in part that the 1973 mortgage between appellee and First Federal was a non-recourse loan which precluded appellant, as an assignee of the note and mortgage, from obtaining a deficiency judgment against appellee or its individual partners.
In Wolfson v. Euclid Avenue Associates (Mar. 20, 1997), Cuyahoga App. No. 70779, unreported, this court noted ambiguities in the non-recourse language of Part I and Part II of the 1973 mortgage. Part I of the mortgage (the construction loan) provided both appellee and its partners with non-recourse protection, while Part II of the mortgage (the permanent loan) contained non-recourse language only for appellee's individual partners and did not expressly provide non-recourse protection for appellee. The ambiguities in the loan agreement created a genuine issue of material fact on the issue presented, viz., whether appellee and First Federal intended the permanent loan to be non-recourse as to appellee. Therefore, this court reversed the summary judgment order and remanded the case to the trial court for a jury trial on that issue.
The court commenced the jury trial on August 11, 1998. Appellant testified on his own behalf and offered testimony concerning his purchase of the subject property from FirstFed. According to appellant, the transaction included all of FirstFed's interest related to the property, including the promissory note executed by appellee. Appellant conceded he was not a party to the original transaction between appellee and First Federal and, therefore, he had no knowledge of the intent of the parties during that transaction.
Norman Spindelman, a partner in appellee, then offered testimony on the negotiation process of the 1973 loan agreement and the intent of the parties. Mr. Spindelman negotiated the loan transaction with First Federal and Chase. Mr. Spindelman personally drafted Section 3.07 of Part I of the mortgage, which was then typed onto the banks' preprinted forms. Mr. Spindelman testified that he intended Section 3.07 to apply to both Part I and Part II of the mortgage; therefore, he included the following language in Section 3.07: "Anything contained in this Mortgage or in the Note to the contrary notwithstanding * * *." Mr. Spindelman stated that First Federal assented to the inclusion of Section 3.07; further, First Federal agreed that Section 3.07
applied to Part II of the mortgage. According to Mr. Spindelman, the parties intended that First Federal's only recourse under the mortgage would be foreclosure.
Appellant presented the testimony of two expert witnesses. Stanley Majkrzak, a senior partner in a local accounting firm, testified that he is a specialist in corporate tax, partnership tax, and individual tax consulting. Mr. Majkrzak acknowledged that appellant was a long-time client of his firm. Mr. Majkrzak reviewed appellee's tax returns for 1981 through 1995, and testified that appellee listed the debt in these years on the recourse line of the tax returns. Mr. Majkrzak opined that appellee intended to treat the loan as recourse, at least for tax purposes — otherwise appellee would have listed the liability on the non-recourse line of the tax returns.
Appellant's final witness was Richard Corbin Washington, president and senior lender at Enterprise Bank. Mr. Washington testified that he had eighteen years of experience in commercial lending. Mr. Washington was retained by appellant to review the subject loan documents, and he opined that the permanent loan agreement between appellee and First Federal was recourse as to appellee.
Appellee called Randall Shorr, Esq., a local real estate attorney, to counter the expert testimony presented by appellant. Mr. Shorr reviewed the loan documents and noted Part I of the mortgage was incorporated into Part 11.[2] Mr. Shorr stressed the following language in Section 3.07: "Anything contained in this Mortgage or in the Note to the contrary notwithstanding * * *." According to Mr. Shorr, this language overrode any inconsistent provisions of the mortgage. Mr. Shorr opined that the mortgage provided appellee and its individual partners with non-recourse protection throughout the life of the loan.
Appellee called John Worboys, C.P.A., as a fact witness. Mr. Worboys has prepared appellee's tax returns since the late 1970's. Mr. Worboys testified that the financial statements he used to prepare the tax returns did not distinguish between recourse and non-recourse loans; in fact, the subject of recourse and non-recourse liability was never raised by Mr. Worboys or his clients. Mr. Worboys stated that the distinction between recourse and non-recourse liability would not have had an impact on appellee's tax liability.
The trial court received several exhibits into evidence, including: (1) the 1973 loan documentation;[3] (2) the agreement of purchase and sale between appellant and FirstFed dated August 17, 1992; and (3) appellee's tax returns. After deliberation, the jury returned a verdict in favor of appellee and against appellant. In a journal entry filed on August 20, 1998, the trial court entered judgment upon the jury verdict. On September 9, 1998, appellant filed this appeal.
 II.
In its sole assignment of error, appellant challenges the jury verdict and judgment of the trial court as being against the manifest weight of the evidence.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony; therefore, an appellate court must afford deference to the findings of the trial court.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In Wolfson v. Euclid Avenue Associates (Mar. 20, 1997), Cuyahoga App. No. 70779, unreported, this court found that the mortgage exhibited ambiguity on the issue of recourse and non-recourse liability. Therefore, this court remanded the underlying case for a jury trial to determine the intent of the parties. The only witness with actual knowledge to testify in this regard was Mr. Spindelman, a partner in appellee. Mr. Spindelman negotiated the 1973 loan agreement on behalf of appellee and, therefore, had personal knowledge of the negotiation process and the intent of the parties. Mr. Spindelman testified that he and First Federal's representatives intended the entire mortgage to be non-recourse as to appellee and its individual partners, and that the only recourse under the mortgage would be foreclosure.
Appellant insists that we should reject Mr. Spindelman's testimony as self-serving. However, "[a] case should not be reversed because we may have different opinions about the credibility of the witnesses and the evidence." Driscoll v.Norprop, Inc. (Sept. 3, 1998), Cuyahoga App. No. 72479, unreported.
Appellant presented expert witnesses in an attempt to contradict Mr. Spindelman's testimony; however, appellant's expert witnesses were offset by the expert testimony of Mr. Shorr and the fact testimony of appellee's accountant. This court will not usurp the role of the jury in weighing the credibility of conflicting expert testimony.
Based upon the foregoing, we find that the jury verdict and judgment of the trial court were not against the manifest weight of the evidence. Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. and JAMES D. SWEENEY, J. CONCUR.
 _______________ LEO M. SPELLACY JUDGE
[1] Deficiency judgment refers to the mortgagor's liability under a mortgage which is not satisfied by the amount the mortgagee receives from the foreclosure sale.
[2] Section 42 of Part II provides: "All of the terms, provisions and conditions not inconsistent with part II contained in part I hereof and in the permanent agreement of even date herewith are incorporated herein * * *."
[3] The 1973 loan documentation included: (1) the loan commitment letter from First Federal to appellee dated April 20, 1973; (2) the construction and permanent note; (3) the permanent loan agreement; (4) the open-end building loan mortgage and permanent mortgage; (5) the building loan agreement; and (6) the purchase and sale agreement.